Denisse O. Gastélum, SBN 282771
**GASTÉLUM LAW,**
**A PROFESSIONAL CORPORATION**
3767 Worsham Ave.
Long Beach, California 90808
Tel: (213) 340-6112
Fax: (213) 402-8622
Email: dgastelum@gastelumfirm.com

Christian Contreras, Esq., (SBN 330269)
Email: CC@Contreras-Law.com
Edwin S. Salguero, Esq., (SBN 344820)
Email: ES@Contreras-Law.com
**LAW OFFICES OF CHRISTIAN CONTRERAS**
**PROFESSIONAL LAW CORPORATION**
360 E. 2nd St., 8th Floor
Los Angeles, California 90012
Tel: (323) 435-8000; Fax: (323) 597-0101

Attorneys for Plaintiff,
J.C.

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| J.C., an individual, | **CASE NO.:** |
| Plaintiff, | **COMPLAINT FOR DAMAGES** |
| v. | 1. Fourth Amendment Violation (42 U.S.C. § 1983); |
| RIVERSIDE COUNTY SHERIFF'S DEPARTMENT; a public entity; COUNTY OF RIVERSIDE, a public entity; SHERIFF CHAD BIANCO, individually; CHRISTIAN HEIDECKER, individually; JESSICA YELENICH, individually; SENTINEL OFFENDER SERVICES, LLC, a Limited Liability Company; KARISMA VACA, an individual, and DOES 1 through 10, individually, jointly and severally, | 2. Fourteenth Amendment Violation – Due Process (42 U.S.C. § 1983); 3. Failure to Intervene (42 U.S.C. § 1983); 4. Municipal Liability – Unconstitutional Policies, Customs, Practices (*Monell*, 42 U.S.C. § 1983); 5. Municipal Liability – Failure to Train (*Monell*, 42 U.S.C. § 1983); 6. Supervisory Liability (42 U.S.C. § 1983); 7. Negligence; 8. Sexual Assault; 9. Violation of California Civil Code § 52.4 (Gender Violence); 10. Violation of Civil Code Section § 1708.88; 11. Violation of California Civil Code § 52.1 (Tom Bane Act) |
| Defendants. | |
| | **DEMAND FOR JURY TRIAL** |

1

**COMPLAINT FOR DAMAGES**

**COMES NOW** Plaintiff J.C., an individual, and alleges as follows:

**I.**

**INTRODUCTION**

1.      This civil rights action seeks to establish the true and unequivocal facts surrounding the heinous sexual abuse of female detainees by a correctional deputy who was assigned to be their case manager through the Riverside County Sheriff's Department (hereinafter also "RCSD"), Riverside Alternative Sentencing Program (hereinafter also "RASP"), a house arrest program.  This action also seeks to establish the true and unequivocal facts surrounding the efforts by the COUNTY and the RCSD to cover up the abuse, and worst, to silence the victims.

2.      For numerous years, RCSD Correctional Deputy CHRISTIAN HEIDECKER (hereinafter "Defendant HEIDECKER") used his position of power as a correctional deputy to sexually abuse and torment numerous female detainees, including Plaintiff J.C.'s sister, A.R., who were under his control.  Defendant HEIDECKER repeatedly threatened that he would send A.R. to jail again if Plaintiff J.C. did not comply with his sexual demands.

3.      The RASP female detainees opted into RASP believing that they were being given another chance at life.  Little did they know that when Defendant HEIDECKER walked around the women's jail and singled them out as a potential RASP participant, he was targeting his next victim.

4.      When Defendant HEIDECKER was finally caught, the RCSD concocted a plan to cover up the sexual abuse and to prevent the public from hearing the victims' accounts of what Defendant HEIDECKER did to them.  This plan was orchestrated and executed by RCSD Professional Standards Bureau Correctional

Sergeant JESSICA YELENICH (hereinafter "Defendant YELENICH") and the COUNTY's private attorney Nicole R. Roggeveen.[1] Two women, no less.

5.     The plan was this: Following Defendant HEIDECKER's confession to the sexual abuse on September 1, 2023, Defendant HEIDECKER agreed to turn himself in on September 15, 2023. This gave the COUNTY and RCSD fifteen (15) days exactly to silence the victims. Defendant YELENICH and Attorney Roggeveen created a list of HEIDECKER's victims and one by one they offered them money in exchange to waiving their right to sue the COUNTY and the RCSD for the sexual abuse they were forced to endure.

6.     Defendant HEIDECKER utilized abusive patterns in each interaction with all women involved. The right to be free from sexual abuse, specifically by those in law enforcement positions, is foundational and should be protected for all individuals.

## II.

## JURISDICTION AND VENUE

7.     This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourteenth Amendment to the United States Constitution, and the laws and Constitution of the State of California. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343.

8.     Venue is proper within the Central District of California pursuant to 28 U.S.C. § 1391(b)(1) and (2) because all Defendants reside within this district and the events and omissions giving rise to Plaintiffs' claims occurred within this district.

///

///

///

---

[1] Notably, Nicole Roggeveen is a partner at Cole | Huber LLP, where she specializes in defending law enforcement agencies when they are sued for civil rights violations. *See* https://www.colehuber.com/attorneys/nicole-r-roggeveen/

**COMPLAINT FOR DAMAGES**

### III.

### PENDANT CLAIMS

9.      Plaintiff presented her government claim on November 8, 2023. The government claim was rejected on December 18, 2023. As such, Plaintiff has complied with the California Tort Claims Act requirements with respect to their claims arising under state law. Nevertheless, Government Code section 945.9, "[a] claim arising out of an alleged sexual assault by a law enforcement officer if the alleged assault occurred while the officer was employed by a law enforcement agency is exempted

from all state and local government claim presentation requirements."

10.      With respect to these supplemental state claims, Plaintiff requests that this Court exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over such claims as they arise from the same facts and circumstances which underlie the federal claims.

### IV.

### PARTIES

**A. Plaintiff**

11.      Plaintiff J.C., is and was, at all times relevant hereto, a resident of the County of Riverside, California. Plaintiff J.C.'s sister, A.R., was a female detainee who was a participant of the Riverside County Sheriff's Department, Riverside Alternative Sentencing Program. Defendant HEIDECKER repeatedly threatened that he would send A.R. to jail again if Plaintiff J.C. did not comply with his sexual demands. Plaintiff brings her claims individually on the basis of 42 U.S.C. §§ 1983 and 1988, the United States Constitution, federal and state civil rights law and California law. Plaintiff also brings these claims as a Private Attorney General, to vindicate not only her rights, but others' civil rights of great importance.

**B. Defendants**

12.      Defendant COUNTY OF RIVERSIDE (hereinafter also "COUNTY") owns, operates, manages, directs and controls Defendant RIVERSIDE COUNTY

SHERIFF'S DEPARTMENT (hereinafter also "RCSD"), also a separate public entity, which employs other Doe Defendants in this action. At all times relevant to the facts alleged herein, Defendant COUNTY was responsible for assuring that the actions, omissions, policies, procedures, practices and customs of its employees, including RCSD employees, complied with the laws and the Constitutions of the United States and of the State of California. Defendant COUNTY, through RCSD, is and was responsible for ensuring the protection and safety of all persons in the custody of the RCSD, including female detainees who participated in Riverside Alternative Sentencing Program (hereinafter also "RASP").

13.    Defendant CHAD BIANCO (hereinafter also "SHERIFF BIANCO"), at all times mentioned herein, is and, since November 6, 2018, has been the Sheriff-Coroner of Defendant COUNTY OF RIVERSIDE, the highest position in the COUNTY Jails. As Sheriff, Defendant BIANCO is and was responsible for the hiring, screening, training, retention, supervision, discipline, counseling, and control of all RCSD employees and/or agents. Defendant SHERIFF BIANCO is and was charged by law with oversight and administration of the RCSD, and all corrections programs, including ensuring the safety and protection of female detainees who participated in RASP. Defendant SHERIFF BIANCO also is and was responsible for the promulgation of the policies and procedures and allowance of the practices/customs pursuant to which the acts of the RCSD RASP alleged herein were committed. Defendant SHERIFF BIANCO is being sued in his individual and official capacities.

14.    Defendant CHRISTIAN HEIDECKER (hereinafter also "HEIDECKER"), at all times mentioned herein, was employed by Defendant COUNTY as a correctional deputy at the RCSD, and was acting within the course and scope of that employment. At all times mentioned herein, Defendant HEIDECKER was assigned to work as a case manager for RASP, and was responsible for carrying out RCSD policies and procedures and for ensuring the

protection and safety of the female detainees assigned to him. The present defendant is sued in his individual capacity for damages. At all times relevant hereto, the present defendant was acting under the color of law.

15.     Defendant JESSICA YELENICH (hereinafter also "YELENICH"), at all times mentioned herein, was employed by Defendant COUNTY as the Correctional Sergeant for the RCSD Professional Standards Bureau, and was acting within the course and scope of that employment. At all times mentioned herein, Defendant YELENICH was responsible for carrying out RCSD policies and procedures and for ensuring the protection and safety of all inmates in the custody of the RCSD, including the RASP female detainees. The present defendant is sued in his individual capacity for damages. At all times relevant hereto, the present defendant was acting under the color of law.

16.     Defendant SENTINEL OFFENDER SERVICES, LLC (hereinafter also "SENTINEL") is a Delaware limited liability company licensed to and doing business in the State of California, County of Riverside as a contracted provider of electronic monitoring devices, including radio frequency equipment (e.g., ankle monitors), global positioning system ("GPS") devices and cellular devices, to the COUNTY and RCSD.  At all times relevant to the facts alleged herein, Defendant SENTINEL was responsible for assuring that the actions, omissions, policies, procedures, practices and customs of its employees complied with the laws and the Constitutions of the United States and of the State of California. Defendant SENTINEL is and was responsible for ensuring the protection and safety of all persons in the custody of the RCSD, including female detainees who participated in Riverside Alternative Sentencing Program (hereinafter also "RASP"), by ensuring that the SENTINEL electronic monitoring devices were not used as a means to violate the rights of the female detainees by the RCSD RASP correctional deputies and case managers. At all relevant times mentioned herein, Defendant SENTINEL, and its employees, agents, officers, administrators and representatives, were acting under the color of law.  *See Tsao v. Desert Palace, Inc.,* 698 F.3d 1128 (9th Cir.

2012) (*Monell* also applies to suits against private entities); *see also Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)( action taken by private individuals may be "under color of state law" where there is "significant" state involvement in the action); *Melara v. Kennedy*, 541 F.2d 802, 804 (9th Cir.1976). In the § 1983 context, the Ninth Circuit has recognized a number of tests for identifying state action. *See Howerton v. Gabica*, 708 F.2d 380, 383 (9th Cir.1983) (describing the government nexus test, the joint action test, the public function test and the state compulsion test).

17.    Defendant KARISMA VACA (hereinafter also "VACA"), at all times mentioned herein, was employed by Defendant SENTINEL, and was acting within the course and scope of that employment. At all times mentioned herein, Defendant VACA was responsible for carrying out SENTINEL policies and procedures and for ensuring the protection and safety of all inmates in the custody of the RCSD, including the RASP female detainees. The present defendant is sued in her individual capacity for damages. At all times relevant hereto, the present Defendant was acting under the color of law.  *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)( action taken by private individuals may be "under color of state law" where there is "significant" state involvement in the action); *Melara v. Kennedy*, 541 F.2d 802, 804 (9th Cir.1976). In the § 1983 context, the Ninth Circuit has recognized a number of tests for identifying state action. *See Howerton v. Gabica*, 708 F.2d 380, 383 (9th Cir.1983) (describing the government nexus test, the joint action test, the public function test and the state compulsion test).

18.    Defendants COUNTY OF RIVERSIDE, RIVERSIDE COUNTY SHERIFF'S DEPARTMENT, SHERIFF BIANCO, HEIDECKER, and YELENICH will hereinafter be referred to as the COUNTY DEFENDANTS.

19.    Plaintiff is ignorant of the true names and capacities of Defendants DOES 1 through 10 ("DOE Defendants") and therefore sue these Defendants by such fictitious names. Plaintiff is informed and believes and thereon alleges that each Defendant so named is responsible in some manner for the injuries and damages

1    sustained by Plaintiff as set forth herein. Plaintiff will amend the complaint to state the

2    names and capacities of each DOE Defendant when they have been ascertained.

3        20.    The identities, capacities, and/or nature of involvement of the defendants

4    sued as DOES 1 through 10 are presently unknown to Plaintiff who therefore sues

5    these defendants by fictitious names. Plaintiff is informed, believes, and thereupon

6    alleges that DOES 1 through 10 include individual law enforcement personnel and

7    monitoring personnel employed by the COUNTY, RCSD, and SENTINEL, and that

8    they were involved in some manner and are legally responsible for the wrongful acts

9    and conduct alleged herein. Plaintiff will amend this complaint to substitute the DOE

10   Defendants' true names and capacities when they have been ascertained. Plaintiff is

11   informed, believes, and thereupon alleges that each DOE defendant is a resident of

12   California. Upon information and belief, DOES 1 through 10 were and still are

13   residents of the County of Riverside, California. DOES 1 through 10 are sued in both

14   their individual and official capacities.

15       21.    At all relevant times, DOES 8 through 10 were managerial, supervisorial,

16   training, and/or policymaking employees of Defendants COUNTY and SENTINEL. At

17   the time of the incident, DOES 8 through 10 were acting under color of law within the

18   course and scope of their duties as employees for the RCSD, COUNTY and/or

19   SENTINEL. They had supervisorial authority over DOES 1-10, and the employees of

20   the RCSD and SENTINEL. DOES 8 through 10 were acting with the complete

21   authority and ratification of their principal, Defendants COUNTY and SENTINEL.

22       22.    Each of the defendants, including the DOE defendants, caused, and is

23   responsible for, the unlawful conduct and resulting injuries suffered by Plaintiff by,

24   among other things, personally participating in the unlawful conduct, acting jointly,

25   or conspiring with others who did so; by ordering, authorizing, acquiescing in, or

26   setting in motion policies, plans, or actions that led to the unlawful conduct; by

27   failing to take action to prevent the unlawful conduct; by failing and refusing to

28   initiate and maintain adequate training and supervision; by failing to enact policies to

address the constitutional rights of RCSD detainees despite the obvious need for such a policy; and by ratifying the unlawful conduct that occurred by agents and officers under their direction and control, including failing to take remedial or disciplinary action.

23.    Plaintiff is informed and believes and thereon alleges that each of the Defendants was at all material times an agent, servant, employee, partner, joint venturer, co-conspirator, and/or alter ego of the remaining Defendants, and in doing the things herein alleged, was acting within the course and scope of that relationship. Plaintiff is further informed and believes and thereon alleges that each of the Defendants herein gave consent, aid, and assistance to each of the remaining Defendants, and ratified and/or authorized the acts or omissions of each Defendant as alleged herein, except as may be hereinafter specifically alleged. At all material times, each Defendant was jointly engaged in tortious activity and an integral participant in the conduct described herein, resulting in the deprivation of Plaintiff's constitutional rights and other harm.

24.    Plaintiff is are informed, believes, and thereupon alleges that, at all times relevant hereto, Defendants, and each of them, acted as the agents, servants, and employees of each of the other defendants.

25.    In doing each of the acts and/or omissions alleged herein, Defendants, and each of them, acted within the course and scope of their employment.

26.    In doing each of the acts and/or omissions alleged herein, Defendants, and each of them, acted under color of authority and/or under the color of law.

## V.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

**A. Background Pertaining to RCSD's Riverside Alternative Sentencing Program (RASP)**

27.    At all relevant times, Defendants COUNTY and RCSD operated and maintained the Riverside Alternative Sentencing Program ("RASP"). Defendant

HEIDECKER was assigned to RASP as a case manager at the Coordinated Custody Management Unit in Banning, California.

28.    Plaintiff J.C.'s sister, A.R., like many other incarcerated individuals, was given another chance at life through RASP, a security electronic monitoring program. Specifically, RASP is a house arrest program that is available to people in custody either sentenced or not, pre-arraignment, or pre-conviction. Individuals who are serving time in a COUNTY jail and who have entered a plea may also participate in the RASP program, to serve their time outside of jail.

29.    While participants may apply on their own accord, the COUNTY jails are constantly looking for participants to help alleviate issues with bed space. RASP staff run weekly reports to search for additional incarcerated persons to be interviewed in addition to applications. The reports consist of current incarcerated persons which have been sentenced from the courts within the last week. The program is voluntary and requires the agreement of participants.

30.    RASP staff members, including Defendant HEIDECKER, have discretion to determine who may be a "good candidate," and applicants must fill out a form, which must be accepted. They are then interviewed, and finally given a checklist of items to complete before being confirmed. After a sweeping amount of required effort, clearly participants are determined to keep their spot.

31.    When someone is found eligible to participate in RASP, they are required to sign a set of terms and conditions that guide their ability to be out of jail during this time. To participate, they must agree to **ALL** the terms and conditions that are included in the Unsentenced Release Terms and Conditions Packet. If a number of any of these terms are violated, one of the repercussions includes being sent back to the COUNTY's custody. Additionally, in order for participants to live with others, not only is permission required, but the person who joins the household has a set of terms and conditions they must agree to as well.

32.    Program termination is defined explicitly in the RASP policy.

**COMPLAINT FOR DAMAGES**

Participants will be instructed to contact their case manager for further instructions upon termination from the program. Additionally, full-time participants will be transported back to the RCSD Larry D. Smith Correctional Facility to be placed back into custody.

33.    RASP participants are assigned case managers to monitor their activities. Case managers are expected to monitor the participant's activities, verify participants remain current on home monitoring fees, address issues with monitoring equipment, update client information, and verify participants comply with the terms and conditions of the program. Case managers supervise the following: entries and exits from the residence, equipment tampering and/or malfunctions, verify the participant follows their set schedule, and verify all paperwork and personal information provided by the participant is valid and current.

34.    A visual example of the terms and conditions is listed below[2], with the actual terms that participants agree to:

**RIVERSIDE ALTERNATIVE SENTENCING PROGRAM**

**UNSENTENCED RELEASE TERMS AND CONDITIONS PACKET**

**I, <u>Jane Doe</u>, hereby agree to as follows:**

6. ☒        The participant's confinement time is to be spent within the interior premises of their home.

7. ☒        Participants who are post-sentence are required to stay within the interior of their home during the hours ordered by their case manager.

9. ☒        Failure to abide by these conditions may lead to removal from the program and return to custody.

14. ☒        The participant is required to obey all laws and ordinances while a member of the program.

---

[2] The numbers reference the actual numbers referred to in the packet, with only some listed to highlight their significance.

**COMPLAINT FOR DAMAGES**

15. ☒    The participant must comply with all terms and conditions of the program as well as any directives issued by their case manager and failure to do so will result in a return to custody.

16. ☒    The participant agrees to obey all laws, not possess drugs or narcotics, not possess any deadly weapons, and not allow anyone who is under the influence of drugs into their home.

20. ☒    The participant relinquishes their Fourth Amendment rights by allowing to be searched at any time by members of the Sheriff's Department.

23. ☒    Failure to follow these rules may result in removal from the program.

24. ☒    Participants agree to not have communication with anyone else in RASP.

28. ☒    Work schedules may only be changed with verification by the employer and approval from the SECP staff.

31. ☒    Any failure to return to the residence within the prescribed time, leaving at an unapproved time, or tampering, can be deemed as an escape from custody.

32. ☒    Failure to operate one's equipment, or negligence in doing so, may result in the participant's return to custody.

33. ☒    I will abide by any reasonable requests and instructions related to program compliance.

/s/ **Jane Doe**

**PARTICIPANT SIGNATURE**

35.    With possibility of a better way of life awaiting participants if they sign and agree to the terms, this subjects them to being defenseless. Not only must participants confirm to abide by all the terms stated above, but by a magnitude of others. Also, because of their previous experiences of incarceration, the fear of being put back into jail is lingering. This pushed not only J.C., but other victims to be coerced, and fearful that they had to abide by the desires of Defendant HEIDECKER to remain out of jail.

**COMPLAINT FOR DAMAGES**

36.    For Defendant HEIDECKER, this susceptibility makes these women great candidates. Not only are they confined to specific terms and conditions, but they are vulnerable due to their fear and status.

37.    Participants are given schedules, determined by their employment/student status. They are required to be in certain locations at certain times. Typically, if they are not employed/in school their "free time" can be anywhere from 7am-3pm. If they are employed, this can be adjusted to potentially twelve (12) hours outside of the home, six (6) days a week. They are required to be within the four walls of their home outside of that timeframe. At times, participants can be placed on a lockdown status for a day, where they are not able to leave their homes, if they violate program terms.

38.    Free time is adjusted at the discretion of the case manager. Additionally, scheduled free time will not be allowed beyond the maximum without a supervisor's approval.

39.    RASP is exceptionally appealing to those who wish to continue to attend to their lives outside of the jailhouse doors, whether they be single mothers, or others looking for a fresh start. With the knowledge of such high-stakes terms, Defendant HEIDECKER was given *carte blanche* to exploit participants with the consequence of revoking participation in the program.

40.    RASP participants are monitored through a Global Positioning System (GPS), used in their ankle monitors. These systems are then monitored through Defendant SENTINEL OFFENDER SERVICES, LLC (hereinafter "SENTINEL") with whom the Riverside County Sheriff's Department contracts with.

41.    Defendant SENTINEL provides the Riverside County Sheriff's Department with GPS devices and ankle monitors. Each RASP participant is assigned a case manager, who is a correctional deputy, that manages their case while in the program. These case managers are given SENTINEL cell phones to communicate with the RASP participants. RASP participants communicate by cell phone with their

**COMPLAINT FOR DAMAGES**

1    case managers.

2         42.    Defendant KARISMA VACA was an employee with Defendant

3    SENTINEL. She was employed by Defendant SENTINEL and was assigned to the

4    RASP office.  She worked inside the RASP office with the other deputies, including

5    Defendant HEIDECKER. Defendant VACA's job was to collect the work issued

6    phones from deputies within the Riverside County Sheriff's Department who were

7    case managers in the RASP program; this included Defendant HEIDECKER.

8         43.    Upon information and belief, Defendant VACA and Defendant

9    HEIDECKER engaged in a back and forth pertaining to the collection of his

10   SENTINEL cellular phone. Defendant HEIDECKER had texted Defendant VACA

11   sexually explicit texts regarding having sexual relations with her. After Defendant

12   VACA collected the phones, she feared Defendant HEIDECKER would continue to

13   text her, which concerned her.

14        44.    Upon information and belief, Defendant HEIDECKER maintained a

15   romantic and sexual relationship with Defendant VACA. Defendant HEIDECKER

16   was utilizing his romantic and sexual relations with Defendant VACA to continue to

17   manipulate RASP participants.  Certainly, had Defendant VACA not engaged in

18   romantic and sexual relations with Defendant VACA, there would be less victims of

19   Defendant HEIDECKER.  The grooming of J.C. and others could have been stopped

20   at the outset had there been no complacency by employees at SENTINEL, including

21   Defendant VACA. Indeed, more supervision by employees could have prevented this

22   abuse. Nevertheless, Defendant HEIDECKER used his position of power to continue

23   his advances and abuse, and utilized his relationship with Defendant VACA, a

24   SENTINEL employee, to continue doing so.

25   **B. CHRISTIAN HEIDECKER' Sexual Criminal Scheme**

26        45.    Defendant HEIDECKER's sexual criminal scheme was simple, but

27   sinister. Defendant HEIDECKER, in his capacity as a RCSD deputy, coerced women

28   participants of RASP into satisfying his sexual desires under various threats,

including the threat of jail times, threat of criminal consequences, or threat of RASP revocation. Fearing going to jail or criminal consequences, women participants of RASP unwillingly complied with Defendant HEIDECKER's sexual requests and were subjected to sexual abuse by Defendant HEIDECKER.

46.     Defendant HEIDECKER, as a Riverside County Sheriff's Department deputy, was assigned as a deputy to RASP at the Coordinated Custody Management overseeing compliance of RASP terms and conditions. Defendant HEIDECKER was a case manager to many RASP participants, many of which were women.

47.     One of Defendant HEIDECKER's duties was to remain in contact with RASP participants and ensure compliance with RASP terms and conditions. RASP participants were required to communicate with Defendant HEIDECKER through text message.

48.     Defendant HEIDECKER had a specific pattern in which he utilized to take advantage of not only Plaintiff J.C. and her sister A.R., but of the other women involved in RASP. This pattern typically began by Defendant HEIDECKER personally choosing RASP participants then being assigned as their case manager, despite at times he communicated with women whom he was not assigned to, explaining that he was "filling in" for someone else. This contact began on his work phone, provided by Defendant SENTINEL.

49.     Following this, Defendant HEIDECKER would ask each woman to send him photos that were framed as per their agreed to terms and conditions. Sometimes it was because he needed to "see their ankle monitor," or other times he asked for photos of their face to "update their pictures on file."

50.     The conversation would then take a disturbing turn when Defendant HEIDECKER would praise the photos he received, complimenting the RASP participants outside appearance, including their feet. He would remind them of their newly found freedom with comments like "it must be good to be home" and "this program is a privilege." By utilizing terms of endearment, and reminding participants

**COMPLAINT FOR DAMAGES**

how lucky they should feel, he aimed to make these women feel seen, to make sure he had power over them soon enough.

51.    Defendant HEIDECKER would also insist on photographs of feet without socks on which was not necessary to fully depict the electronic monitor but part of Defendant HEIDECKER's sexual gratification in order to satisfy his foot fetish. [3]

52.    After the participants were thankful for his compliments, he would then ask for more photos, or go back and forth about their looks, and his attraction to them. When the women were confused and concerned of the conversation, he reverted their concern by saying that communication on his personal phone could occur more freely.

53.    Time and time again, the flirtatious means of the conversation began on his part, and he convinced RASP women participants to text him on his personal phone. This was advertised as casual, and Plaintiff J.C., unknowing of what was to come, agreed, in order to confirm Defendant HEIDECKER remained satisfied with her.

54.    Defendant HEIDECKER would then establish "ground rules" with RASP participants as soon as these conversations moved to his personal phone. Many of the ground rules established by Defendant HEIDECKER were either illegal or not terms or conditions part of RASP, merely rules enacted by Defendant HEIDECKER to conceal his sexual criminal scheme.

55.    One of Defendant HEIDECKER's ground rules was a rule to delete messages between Defendant HEIDECKER and a RASP participant. For example, if this ground rule was not followed, Defendant HEIDECKER threatened consequences including to send a sheriff deputy to the home of the RASP participant to ensure that

---

[3] It should be known that Defendant HEIDECKER has confessed to a foot fetish whereby he experiences sexual gratification from photographs depicting feet.

COMPLAINT FOR DAMAGES

1    the messaged were deleted.[4]

2        56.    Defendant HEIDECKER explained the high-stakes nature of the

3    conversation, making clear to Plaintiff J.C. how much there was to lose. Defendant

4    HEIDECKER aimed to build rapport with RASP participants, sharing personal

5    information in order to humanize himself and make RASP participants feel guilty

6    about any desire to report him.

7        57.    Defendant HEIDECKER also obtained sexual gratification from

8    establishing dominance over the RASP participants. Once Defendant HEIDECKER

9    was able to establish dominance, his requests became more sexual in nature.

10       58.    Defendant HEIDECKER established his dominance through his use of

11   words to RASP participants. Defendant HEIDECKER would also assert his

12   dominance by constant and multiple texts to RASP participants if they did not

13   respond for a short period of time. Defendant HEIDECKER was aware that he could

14   receive what he desired and had no shame in doing so. Defendant HEIDECKER

15   would also utilize guilt to make RASP participants feel regretful if they neglected the

16   conversation that was often one-sided.

17       59.    Defendant HEIDECKER's position of power forced Plaintiff J.C. to

18   submit to Defendant HEIDECKER's advances to please him. Plaintiff J.C. was

19   vulnerable due to her status as previously incarcerated and had a loss of control at this

20   point. She was also vulnerable because Defendant HEIDECKER would threaten to

21   send her sister, A.R., back to jail if Plaintiff J.C. did not comply with his sexual

22   demands. If Plaintiff J.C. were to retaliate against him, she risked her sister, A.R.,

23   being taken off the program, as per not to not "follow the directives of her case

24   manager," as was listed in the terms she agreed to.

25       60.    Once Defendant HEIDECKER was able to establish his dominance and

26   _____

27   [4] Indeed, several of HEIDECKER's victims confirmed that this threat was actualized when all of a
sudden RCSD sheriff's deputies would show up at their door immediately after the victim refused
one of the sexual requests.  Based thereon, there exist additional RCSD correctional deputies who

28   participated in HEIDECKER's sexual scheme.

**COMPLAINT FOR DAMAGES**

control, Defendant HEIDECKER subjected RASP women participants to sexual abuse in the following forms:

    A. Transmitting unwanted sexual messages;

    B. Demanding sexual images;

    C. Demanding nude images;

    D. Demanding that women RASP participants to engage in sexual acts;

    E. Demanding that women RASP participants record themselves engaging in sexual acts;

    F. Demanding that women RASP participants send Defendant HEIDECKER images of themselves engaging in sexual acts;

    G. Transmitting sexual images of Defendant HEIDECKER to women RASP participants;

    H. Transmitting recordings of Defendant HEIDECKER engaging in sexual acts to women RASP participants;

    61.   Defendant HEIDECKER's messages were unsolicited and RASP participants did not consent to any of Defendant HEIDECKER's sexual advances including the transmission of sexual images. However, women RASP participants complied with Defendant HEIDECKER's under threat. Defendant HEIDECKER would threaten RASP participants with the following consequences if his sexual requests were not followed:

    A. Arrest and confinement to jail;

    B. Imposition of additional criminal charges against the RASP participant;

    C. More restrictive hours meaning that RASP participants would be confined at home for longer hours including threats of "lockdown for the rest of the day";

    D. More restrictive curfew hours meaning that RASP participants have to arrive home earlier;

    E. Termination of the RASP participant's enrollment in RASP which would

1    lead to a return to custody.

2    62.    Consequently, given that women RASP participants were threatened with

3    many threats including jail, women RASP participants, including Plaintiff, had no

4    option but to comply with Defendant HEIDECKER's illegal and sexual demands.

5    63.    Central to Defendant HEIDECKER's sexual criminal scheme of the

6    threat to RASP participants was going back to jail. Defendant HEIDECKER made it

7    clear that if his demands were not met, Defendant HEIDECKER had the power to

8    send RASP participants to jail.

9    64.    Defendant HEIDECKER admitted to these conversations with RASP

10    participants, and that he did in fact move conversations from his Sentinel phone to his

11    personal phone. Defendant HEIDECKER justified doing so due to the flirtatious

12    nature of the messages. In reference to the messages sent, Defendant HEIDECKER

13    admitted to having a foot fetish and asking RASP participants for images of their

14    ankle monitors in order to see their feet in the photo. Additionally, Defendant

15    HEIDECKER admitted to enhancing hours in the program and performing other

16    favors in exchange for sexual photos of the participants.

17    65.    Many of the RASP participants subjected to Defendant HEIDECKER's

18    sexual criminal scheme have families, including children of their own, so the threat of

19    going to jail was severe. All the RASP participants subject to Defendant

20    HEIDECKER's sexual criminal scheme were desperate to stay out of jail.

21    **C. Plaintiff J.C. was One of CHRISTIAN HEIDECKER's Victims**

22    66.    On July 20, 2023, Plaintiff J.C.'s sister, A.R., was enrolled in RASP.

23    67.    On July 21, 2023, A.R. was assigned Defendant HEIDECKER as her

24    case manager.

25    68.    On July 21, 2023, communication between A.R., Plaintiff J.C. and

26    Defendant HEIDECKER began.

27    69.    Defendant HEIDECKER's sexual criminal scheme was enforced against

28    Plaintiff J.C. upon initial conversation with her sister, A.R., as he began to ask for

19

**COMPLAINT FOR DAMAGES**

photos, and turned the conversation into a flirtatious one with his messaging.

70.    After Defendant HEIDECKER maneuvered the conversation to his liking, Defendant HEIDECKER then pushed the conversation to be moved to his personal phone. After the conversation was moved to his personal phone, he laid out "ground rules" to A.R. and Plaintiff J.C., explaining that she had an obligation to ensure that he was protected from being held accountable for his actions.

71.    From there, Defendant HEIDECKER had more "flexibility" to ask for additional inappropriate photographs from A.R. and Plaintiff J.C. and sent sexual messages insinuating his desires to engage in sexual acts with A.R. and Plaintiff J.C.

72.    In exchange for photographs, Defendant HEIDECKER would grant A.R. maximized curfew hours. When A.R. and Plaintiff J.C. did not respond as fast as Defendant HEIDECKER desired, he would send multiple threatening messages to both A.R. and Plaintiff J.C. If Plaintiff J.C. did not send Defendant HEIDECKER what he demanded, he would send threatening messages about his power to put A.R. back in jail or use guilt to make Plaintiff J.C. feel as though she had an obligation to do so. This abuse carried on for weeks.

73.    Plaintiff J.C. was aware of the magnitude of the situation, as she expressed that if she did not do what was requested by Defendant HEIDECKER, A.R. would then be removed from RASP and transported back to a COUNTY Jail, which she feared greatly.

74.    August 30, 2023, was the last day that Defendant HEIDECKER, Plaintiff J.C. and A.R. had contact.

75.    On September 1, 2023, an Investigator with the Riverside County Sheriff's Department made contact with Defendant HEIDECKER at his home. In a voluntary statement, Defendant HEIDECKER admitted to having these abusive conversations, acknowledged his sexual motivations in doing so, including his foot fetish, and admitted to enhancing hours in the program and conducting "favors" in exchange for photos from the participants.

**COMPLAINT FOR DAMAGES**

76.     Defendant HEIDECKER was arrested on September 15, 2023, and charged with eighteen (18) felony counts for engaging in a sexual act without consent as a detention officer; forced sexual penetration; extortion; dissuading a witness; and bribery.

77.     On February 26, 2023, Defendant HEIDECKER pled guilty to five (5) counts of extortion, four (4) counts of witness intimidation, and four (4) counts of bribery. Defendant HEIDECKER was sentenced to five years in prison.

### D. The COUNTY and RCSD Orchestrate a Plan to Silence the Victims By Offering Hush Money in Exchange for Waivers to Sue.

78.     On September 1, 2023, Defendant HEIDECKER confessed to sexually abusing numerous female detainees who were in his direct control and custody through RASP.

79.     At the request of the COUNTY and RCSD, Defendant HEIDECKER agreed to turn himself in on September 15, 2023.

80.     This fifteen (15) day gap allowed the COUNTY and the RCSD to execute a plan to cover up the sexual abuse and to prevent the public from hearing the victims' accounts of what Defendant HEIDECKER did to them. This plan was orchestrated and executed by RCSD Professional Standards Bureau Correctional Sergeant JESSICA YELENICH and the COUNTY's private attorney Nicole R. Roggeveen.

81.     Defendant YELENICH and Attorney Roggeveen created a list of HEIDECKER's victims and one by one they offered them money in exchange to waiving their right to sue the COUNTY and the RCSD for the sexual abuse they were forced to endure.

82.     Plaintiff J.C.'s sister, A.R., was offered $15,000.00 to keep silent and to waive her right to sue the COUNTY and the RCSD for the sexual abuse she endured at the hands of Defendant HEIDECKER.  The COUNTY and RCSD also attempted to silence Plaintiff J.C.

**COMPLAINT FOR DAMAGES**

**E. Defendant HEIDECKER had a History of Sexual Deviancy Known to Defendants COUNTY and RCSD.**

83.     Well before Defendant HEIDECKER executed his criminal sexual scheme, Defendant HEIDECKER starred in a disturbing video recorded at a RCSD jail. The video was entitled "Big Dick Deputies" and Defendant HEIDECKER is clearly identified in the Big Dick Deputies video. *See* Screenshots Below[5].



84.     Not only did Defendant HEIDECKER brazenly star in a video entitled "Big Dick Deputies," Defendant HEIDECKER recorded and starred in such video in a RCSD jail while in his RCSD uniform.

85.     Upon information and belief, Defendants COUNTY and RCSD were aware of Defendant HEIDECKER starring in the "Big Dick Deputies" video, yet failed to take any actions to remediate or address Defendant HEIDECKER's involvement in the video.

86.     Given that Defendants COUNTY and RCSD were well aware of the "Big

---

[5] A full Big Dick Deputies video can be found at the link below. The identities of other non-defendant deputies have been censored by Plaintiff:
https://www.dropbox.com/scl/fi/nxxln966slt408ldmn4h7/Big-Dick-Deputies-Censored-FINAL.mov?rlkey=051tdri44qptnc0smizujzh52&dl=0

**COMPLAINT FOR DAMAGES**

Dick Deputies" video and failed to address Defendant HEIDECKER's involvement, it was foreseeable that Defendant HEIDECKER's would escalate as reflected in his criminal sexual scheme with RASP participants.

## VI.

## FIRST CLAIM FOR RELIEF

### Fourth Amendment Violation

### (42 USC § 1983)

### By Plaintiff As Against Defendants CHRISTIAN HEIDECKER and DOES 1 through 5

87.    Plaintiff realleges and incorporates herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

88.    The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." *Torres v. Madrid*, 592 U.S. 306, 311 (2021). "[A] person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). A seizure for the purposes of the Fourth Amendment "requires either physical force ... or, where that is absent, submission to the assertion of authority." *Torres v. Madrid*, 592 U.S. 306, 311 (2021). An officer has made a "show of authority" when an officer's words and actions would convey to a reasonable person "that he was being ordered to restrict his movement." *California v. Hodari D.*, 499 U.S. 621, 628 (1991).

89.    "Beyond the specific proscription of excessive force, the Fourth Amendment generally proscribes "unreasonable intrusions on one's bodily integrity,' . . . . and other harassing and abusive behavior that rises to the level of 'unreasonable seizure.'" *Fontana v. Haskin*, 262 F.3d 871, 878–79 (9th Cir. 2001) (determining that police officer's "sexual verbal and physical predation against a handcuffed arrestee" on ride to police station violated Fourth Amendment) (citations omitted). The Fourth

Amendment bars intrusion into the body "which are not justified in the circumstances, or which are made in an improper manner." *Schmerber v. California*, 384 U.S. 757, 768 (1966) ("The overriding function of the Fourth Amendment is to protect personal privacy and dignity against unwarranted intrusion by the State")

90.    As alleged above, Defendant HEIDECKER, while acting under color of law, submitted Plaintiff to his authority as a RCSD deputy. Indeed, Defendant HEIDECKER's entire scheme was predicated on wielding his authority in order to have Plaintiff submit to his sexual demands. It was clear to Plaintiff that Defendant HEIDECKER's commands and orders restricted her movement in violation of Plaintiff's Fourth Amendment rights.

91.    Furthermore, Defendant HEIDECKER's conduct also constituted an unreasonable intrusions on Plaintiff's bodily integrity in further violation of Plaintiff's Fourth Amendment rights. In fact, Defendant HEIDECKER's intrusion into Plaintiff's body were not justified under any circumstance. Clearly, Defendant HEIDECKER's intrusion into Plaintiff's body was made for the improper manner to satisfy Defendant HEIDECKER's insatiable sexual impulses.

92.    As a direct and proximate result of Defendants' acts and/or omissions as set forth above, Plaintiffs herein, sustained injuries and damages.

93.    The conduct of Defendant HEIDECKER entitles Plaintiff to punitive damages and penalties allowable under 42 U.S.C. § 1983 and as provided by law. Plaintiff does not seek punitive damages against Defendants COUNTY and RCSD.

94.    Plaintiff is also entitled to reasonable costs and attorneys' fees under 42 U.S.C. § 1988, and other applicable United States and California codes and laws.

///

///

///

///

///

## SECOND CLAIM FOR RELIEF

**Fourteenth Amendment Violation – Substantive Due Process**

**(42 USC § 1983)**

**By Plaintiff As Against Defendants CHRISTIAN HEIDECKER**

**and DOES 1 through 5**

95.     Plaintiff realleges and incorporates herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

96.     The Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law. . ." U.S. Const., Amdt. 14, § 1. The Due Process Clause of the Fourteenth Amendment was intended to prevent government "from abusing [its] power, or employing it as an instrument of oppression." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 196, 109 S. Ct. 998, 1003, 103 L. Ed. 2d 249 (1989).

97.     Under the Fourteenth Amendment's substantive due process prong, courts use the "shocks the conscience" test to determine if a violation has occurred. *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). The threshold question is "whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Id*. at 848 n. 8. Sexual predation can be "unjustifiable by any government interest." *Fontana v. Haskin*, 262 F.3d 871, 882 n. 7 (9th Cir. 2001). Sexual predation can be an "arbitrary exercise of the powers of government, unrestrained by the established principles of private right and distributive justice." *County of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998) (quoting *Hurtado v. California*, 110 U.S. 516, 527 (1884)).

98.     At all relevant times, Defendant HEIDECKER was acting under color of law.

99.     As alleged above, Defendant HEIDECKER groomed, preyed upon, and sexually exploited Plaintiff with the threat of imprisoning Plaintiff if Plaintiff did not comply with Defendant HEIDECKER's sexual demands.

100.  Indeed, Defendant HEIDECKER arbitrarily abused his power as a RCSD sheriff deputy by exploiting and victimizing Plaintiff in order to satisfy his sexual predation. Defendant HEIDECKER sexually preyed upon Plaintiff and took advantage of Plaintiff's vulnerabilities.

101.  Defendant HEIDECKER's conduct clearly shocks the conscience in violation of Plaintiff's Fourteenth Amendment rights.

102.  As a direct and proximate result of Defendants' acts and/or omissions as set forth above, Plaintiffs herein, sustained injuries and damages.

103.  The conduct of Defendant HEIDECKER entitles Plaintiff to punitive damages and penalties allowable under 42 U.S.C. § 1983 and as provided by law. Plaintiff does not seek punitive damages against Defendants COUNTY and RCSD.

104.  Plaintiff is also entitled to reasonable costs and attorneys' fees under 42 U.S.C. § 1988, and other applicable United States and California codes and laws.

## THIRD CLAIM FOR RELIEF

### Failure to Intervene

### (42 USC § 1983)

### By Plaintiff As Against Defendants KARISMA VACA
### and DOES 1 through 5

105.  Plaintiff realleges and incorporates herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

106.  This claim for relief is brought against Defendants KARISMA VACA and RCSD Doe Deputies. While Defendant KARISMA VACA is not a RCSD law enforcement officer, Defendant KARISMA VACA was acting under color of law. Action taken by private individuals may be "under color of state law" where there is "significant" state involvement in the action. *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982); *Melara v. Kennedy*, 541 F.2d 802, 804 (9th Cir.1976). In the § 1983 context, the Ninth Circuit has recognized a number of tests for identifying state action. *See Howerton v. Gabica*, 708 F.2d 380, 383 (9th Cir.1983) (describing the

1   government nexus test, the joint action test, the public function test and the state

2   compulsion test).

3       107.  The Ninth Circuit has clearly held that "police officers have a duty to

4   intercede when their fellow officers violate the constitutional rights of a suspect or

5   other citizen." *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir.2000) (citing

6   *United States v. Koon*, 34 F.3d 1416, 1447 n. 25 (9th Cir.1994), rev'd on other

7   grounds, 518 U.S. 81 (1996)). "[O]fficers can be held liable for failing to intercede

8   only if they had an opportunity to intercede." *Cunningham*, 229 F.3d 1289. "[T]he

9   constitutional right violated by the passive defendant is analytically the same as the

10  right violated by the person who strikes the blows." *Koon*, *supra,* 34 F.3d at 1447 n.

11  25.

12      108.  Defendants KARISMA VACA and RCSD Doe Deputies failed to

13  intervene or intercede when they were made aware that Defendant HEIDECKER was

14  exploiting, abusing, and taking advantage of RASP participants.

15      109.  Upon information and belief, Defendant KARISMA VACA knew the

16  intimate details of Defendant HEIDECKER's criminal sexual scheme because not

17  only was she the SENTINEL employee responsible for monitoring but because

18  Defendant KARISMA VACA was having a sexual relationship with Defendant

19  HEIDECKER.

20      110.  Furthermore, given that Defendant HEIDECKER was a "Big Dick

21  Deputy" and brazenly carried out his criminal sexual scheme, Plaintiff is informed

22  and believes that other RCSD deputies were aware of Defendant HEIDECKER's

23  criminal conduct but failed to intervene or intercede in Plaintiff's constitutional

24  violations.

25      111.  As a direct and proximate result of Defendants' acts and/or omissions as

26  set forth above, Plaintiffs herein, sustained injuries and damages.

27      112.  Accordingly, Defendants KARISMA VACA and RCSD Doe Deputies

28  are equally as liable for Defendant HEIDECKER's violations.

**COMPLAINT FOR DAMAGES**

113.  The conduct of Defendant KARISMA VACA and RCSD Doe Deputies entitles Plaintiff to punitive damages and penalties allowable under 42 U.S.C. § 1983 and as provided by law. Plaintiff does not seek punitive damages against Defendants COUNTY and RCSD.

114.  Plaintiff is also entitled to reasonable costs and attorneys' fees under 42 U.S.C. § 1988, and other applicable United States and California codes and laws.

### FOURTH CLAIM FOR RELIEF

**Municipal Liability – Unconstitutional Policies, Customs, Practices**

**(*Monell*, 42 U.S.C. § 1983)**

**By Plaintiff As Against Defendants RIVERSIDE COUNTY SHERIFF'S DEPARTMENT, COUNTY OF RIVERSIDE, SENTINEL**

**and DOES 6 through 10**

115.  Plaintiff realleges and incorporates herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

116.   As set forth in the forgoing claims for relief, Defendant CHRISTIAN HEIDECKER and DOES 1-5, inclusive, and each of them, committed clear and well-established violations of constitutional rights against Plaintiff J.C. within the course and scope of his employment as RCSD  deputies, under color of law.

117.   On and for some time prior to July of 2023 (and continuing to the present date), Defendants COUNTY, RCSD and DOES 6-10, acting with gross negligence and with reckless and deliberate indifference to the rights and liberties of the public in general, and of Plaintiffs, and of persons in his class, situation and comparable position in particular, knowingly maintained, enforced and applied an official recognized custom, policy, and practice of:

> A. Permitting sheriff deputies, including Defendant HEIDECKER, to contact RASP participants while on duty for non-law enforcement purposes;

B. Permitting sheriff deputies, including Defendant HEIDECKER, to sexually groom RASP participants;

C. Permitting sheriff deputies, including Defendant HEIDECKER, to sexually prey upon RASP participants;

D. Permitting sheriff deputies, including Defendant HEIDECKER, to sexually exploit RASP participants;

E. Permitting sheriff deputies, including Defendant HEIDECKER, to take advantage of RASP participants for sexual purposes;

F. Permitting male sheriff deputies, including Defendant HEIDECKER, oversee female RASP participants;

G. Permitting sheriff deputies, including Defendant HEIDECKER, use their personal cell phones to communicate with RASP participants;

H. Permitting sheriff deputies, including Defendant HEIDECKER, to engage in sexually improper conduct while on duty such as making a video entitled "Big Dick Deputies";

I. Carrying out "cover ups" or plans to conceal misconduct by sheriff deputies, including the misconduct of Defendant HEIDECKER;

J. Encouraging and ratifying cover ups by members of the professional standards bureau, including Defendant JESSICA YELENICH;

K. Permitting members of the professional standards bureau, including Defendant JESSICA YELENICH, to pay sexual abuse victims "hush money" or insulting and demeaning sums of money in exchange for their silence concerning sheriff deputy misconduct;

L. Permitting members of the professional standards bureau, including Defendant JESSICA YELENICH, to file tort claims on behalf of sexual abuse victims to further ensure their silence concerning sheriff deputy misconduct.

**COMPLAINT FOR DAMAGES**

118.   The expressly adopted policies and/or widespread, well-known, and longstanding customs or practices set forth above, constitute standard operating procedures within the Defendants COUNTY and RCSD, which have directly precipitated the pervasive sexual abuse/assault against innocent members of the general public at an unignorable and unacceptable scale, not least of which resemble the egregious constitutional violations suffered by J.C.

119.   Defendants COUNTY and RCSD, and individual supervisory officials thereof, whether named or unnamed, had either actual or constructive knowledge of the unconstitutional policies, practices, and/or customs set forth herein. Despite this knowledge, the Defendants COUNTY and RCSD, by and through officials with final policymaking authority, did condone, tolerate, and ratify such policies, customs, and practices, and have shown deliberate indifference to the foreseeable effects and consequences of these policies, customs, and practices with respect to the civil rights and wellbeing of the present Plaintiff, other individuals similarly situated, and the general public.

120.   The vile sexual exploitation and abuse of Plaintiff J.C. suffered due to the conduct of Defendants HEIDECKER and DOES 1-5, inclusive, caused J.C. to have significant psychological injuries. As a direct consequence of these injuries, Plaintiffs suffered and continue to suffer severe mental, and emotional anguish, as well as extensive hardship.

121.   Furthermore, Plaintiff also alleges that Defendants SENTINEL and DOES 6-10 is liable under municipal liability. In *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128 (9th Cir. 2012), the Ninth Circuit held that *Monell* also applies to suits against private entities.

122.   On and for some time prior to July of 2023 (and continuing to the present date), Defendants SENTINEL and DOES 6-10, acting with gross negligence and with reckless and deliberate indifference to the rights and liberties of the public in general, and of Plaintiffs, and of persons in his class, situation and comparable

position in particular, knowingly maintained, enforced and applied an official
recognized custom, policy, and practice of:

    A. Permitting employees, including Defendant VACA, to ignore improper
       communications on SENTINEL cellular phones;

    B. Permitting employees, including Defendant VACA, to ignore sexual
       communications between RCSD deputies and RASP participants on
       SENTINEL cellular phones;

    C. Permitting employees, including Defendant VACA, to fail to report
       improper communications on SENTINEL cellular phones;

    D. Permitting employees, including Defendant VACA, to fail to report
       sexual communications between RCSD deputies and RASP participants
       on SENTINEL cellular phones;

    E. Permitting employees, including Defendant VACA, to have romantic
       relations with RCSD deputies;

    F. Permitting employees, including Defendant VACA, to have sexual
       relations with RCSD deputies;

123.   The expressly adopted policies and/or widespread, well-known, and
longstanding customs or practices set forth above, constitute standard operating
procedures within the Defendants SENTINEL and DOES 6-10, which have directly
precipitated the pervasive sexual abuse/assault against innocent members of the
general public at an unignorable and unacceptable scale, not least of which resemble
the egregious constitutional violations suffered by J.C.

124.   Defendants SENTINEL and DOES 6-10, and individual supervisory
officials thereof, whether named or unnamed, had either actual or constructive
knowledge of the unconstitutional policies, practices, and/or customs set forth herein.
Despite this knowledge, the Defendants SENTINEL and DOES 6-10, by and through
officials with final policymaking authority, did condone, tolerate, and ratify such
policies, customs, and practices, and have shown deliberate indifference to the

1   foreseeable effects and consequences of these policies, customs, and practices with

2   respect to the civil rights and wellbeing of the present Plaintiff, other individuals

3   similarly situated, and the general public.

4       125.   The vile sexual exploitation and abuse of Plaintiff J.C. suffered due to

5   the conduct of Defendants VACA and DOES 1-5, inclusive, caused J.C. to have

6   significant psychological injuries. As a direct consequence of these injuries, Plaintiffs

7   suffered and continue to suffer severe mental, and emotional anguish, as well as

8   extensive hardship.

9       126.   Accordingly, the policies, practices, and/or customs implemented,

10  maintained, or still tolerated by Defendants COUNTY, RCSD, SENTINEL, or final

11  policymakers thereof, are so inextricably connected to the unconstitutional conduct

12  that Plaintiff J.C. has endured as to be a substantial moving force behind it.

13      127.   Clearly, Defendants COUNTY, RCSD, SENTINEL's unconstitutional

14  customs and practices was the moving force which caused Plaintiff's injuries.

15  Therefore, Defendants COUNTY, RCSD, SENTINEL must be regarded as similarly

16  liable for all claims raised herein against its employees, agents, and/or representatives

17  under 42 U.S.C. § 1983.

18      128.   As a direct and proximate result of Defendants COUNTY, RCSD,

19  SENTINEL's acts and/or omissions as set forth above, Plaintiff herein, sustained

20  injuries and damages.

21      129.   Plaintiff is also entitled to reasonable costs and attorneys' fees under 42

22  U.S.C. § 1988, and other applicable United States and California codes and laws.

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

**COMPLAINT FOR DAMAGES**

## FIFTH CLAIM FOR RELIEF

**Municipal Liability – Failure to Train**

**(*Monell*, 42 U.S.C. § 1983)**

**By Plaintiff As Against Defendants RIVERSIDE COUNTY SHERIFF'S DEPARTMENT, COUNTY OF RIVERSIDE, SENTINEL and DOES 6 through 10**

130.  Plaintiff realleges and incorporates herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

131.  As set forth in the herein, Defendants HEIDECKER, VACA and DOES 1-5, inclusive, and each of them, committed clear and well-established violations of constitutional rights against Plaintiff J.C. within the course and scope of their employment as RCSD deputies and SENTINEL employees, under color of law.

132.  The training of Defendants HEIDECKER, VACA and DOES 1-5, inclusive, by the Defendants COUNTY, RCSD and SENTINEL did not adequately instill the necessary discipline, restraint, competence, and respect for civil rights required of armed law enforcement personnel and employees carrying out certain law enforcement functions. In particular, the training of Defendants HEIDECKER, VACA and DOES 1-5, inclusive, in terms of communicating with RASP participants and sexual abuse relative to RASP participants was in violation of the Fourth and Fourteenth Amendments to the United States Constitution, and was manifestly inadequate.

133.  The critical need for discipline, restraint, and competence on the part of law enforcement and employees carrying out law enforcement functions was and is, or reasonably should have been, well-known to the Defendants COUNTY, RCSD and SENTINEL well before the rights of J.C. were violated.

134.  In fact, Defendants COUNTY, RCSD and SENTINEL failed to train its employees in the following regard:

**COMPLAINT FOR DAMAGES**

A. Permitting sheriff deputies, including Defendant HEIDECKER, to contact RASP participants while on duty for non-law enforcement purposes;

B. Permitting sheriff deputies, including Defendant HEIDECKER, to sexually groom RASP participants;

C. Permitting sheriff deputies, including Defendant HEIDECKER, to sexually prey upon RASP participants;

D. Permitting sheriff deputies, including Defendant HEIDECKER, to sexually exploit RASP participants;

E. Permitting sheriff deputies, including Defendant HEIDECKER, to take advantage of RASP participants for sexual purposes;

F. Permitting male sheriff deputies, including Defendant HEIDECKER, oversee female RASP participants;

G. Permitting sheriff deputies, including Defendant HEIDECKER, use their personal cell phones to communicate with RASP participants;

H. Permitting sheriff deputies, including Defendant HEIDECKER, to engage in sexually improper conduct while on duty such as making a video entitled "Big Dick Deputies";

I. Carrying out "cover ups" or plans to conceal misconduct by sheriff deputies, including the misconduct of Defendant HEIDECKER;

J. Encouraging and ratifying cover ups by members of the professional standards bureau, including Defendant JESSICA YELENICH;

K. Permitting members of the professional standards bureau, including Defendant JESSICA YELENICH, to pay sexual abuse victims "hush money" or insulting and demeaning sums of money in exchange for their silence concerning sheriff deputy misconduct;

L. Permitting members of the professional standards bureau, including Defendant JESSICA YELENICH, to file tort claims on behalf of sexual

abuse victims to further ensure their silence concerning sheriff deputy misconduct.

M. Permitting employees, including Defendant VACA, to ignore improper communications on SENTINEL cellular phones;

N. Permitting employees, including Defendant VACA, to ignore sexual communications between RCSD deputies and RASP participants on SENTINEL cellular phones;

O. Permitting employees, including Defendant VACA, to fail to report improper communications on SENTINEL cellular phones;

P. Permitting employees, including Defendant VACA, to fail to report sexual communications between RCSD deputies and RASP participants on SENTINEL cellular phones;

Q. Permitting employees, including Defendant VACA, to have romantic relations with RCSD deputies; and

R. Permitting employees, including Defendant VACA, to have sexual relations with RCSD deputies.

135.   Therefore, despite the resounding need for improved or further training, both in general and with respect to Defendants HEIDECKER, VACA and DOES 1-5, inclusive, Defendants COUNTY, RCSD and SENTINEL have allowed, if not encouraged, a culture of deliberate indifference to the rights and wellbeing of the public to develop within their respective work forces, thereby substantially causing the present Plaintiff, and countless others like her, to suffer extensive and irreversible violations of their civil rights, including but not limited to the freedom from unreasonable search and freedom to be free from unconscionable governmental action.

136.   Clearly, Defendants COUNTY, RCSD and SENTINEL have shown a conscience-shocking level of deliberate indifference to the manifest, systemic consequences of the referenced training failures and other departmental

**COMPLAINT FOR DAMAGES**

shortcomings. These training failures directly produced the incompetence and impropriety of Defendants HEIDECKER, VACA and DOES 1-5, inclusive,, inclusive, by which the present Plaintiff's civil rights were violated.

137.    Accordingly, the training failures of the Defendants COUNTY, RCSD and SENTINEL are so inextricably connected to the unconstitutional conduct that Plaintiff has endured as to be a substantial moving force behind it. Therefore, the Defendants COUNTY, RCSD and SENTINEL must be regarded as similarly liable for all claims raised herein against its employees, agents, or representatives under 42 U.S.C. § 1983.

138.    The vile sexual exploitation and abuse of Plaintiff J.C. suffered due to the conduct of Defendants HEIDECKER VACA and DOES 1-5, inclusive, caused J.C. to have significant psychological injuries. As a direct consequence of these injuries, Plaintiffs suffered and continue to suffer severe mental, and emotional anguish, as well as extensive hardship.

139.    As a direct and proximate result of Defendants COUNTY, RCSD, SENTINEL's acts and/or omissions as set forth above, Plaintiff herein, sustained injuries and damages.

140.    Accordingly, Defendants COUNTY, RCSD, SENTINEL's failure to train its employees is so inextricably connected to the unconstitutional conduct that Plaintiff J.C. has endured as to be a substantial moving force behind it.

141.    Plaintiff is also entitled to reasonable costs and attorneys' fees under 42 U.S.C. § 1988, and other applicable United States and California codes and laws.

## SIXTH CLAIM FOR RELIEF

### Supervisory Liability

### (42 U.S.C. § 1983)

### By Plaintiff As Against Defendants SHERIFF BIANCO, JESSICA YELENICH and DOES 6 through 10

142.  Plaintiff realleges and incorporates herein by reference each of the

preceding paragraphs of this complaint, and any subsequent paragraphs.

143.  At all material times, Defendants SHERIFF CHAD BIANCO, JESSICA YELENICH and DOES 8 through 10 had the duty and responsibility to constitutionally hire, train, instruct, monitor, supervise, evaluate, investigate, staff, and discipline the other Defendants employed by their respective agencies in this matter, as well as all employees and agents of the COUNTY and RCSD.

144.  Defendants SHERIFF CHAD BIANCO, JESSICA YELENICH and DOES 8 through 10 failed to properly hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline the respective employees of their agencies, including Defendant HEIDECKER and RCSD personnel, with deliberate indifference to Plaintiffs', J.C., and others' constitutional rights, which were thereby violated as described above.

145.  As supervisors, Defendants SHERIFF CHAD BIANCO, JESSICA YELENICH and DOES 8 through 10 each permitted and failed to prevent the unconstitutional acts of other Defendants and individuals under their supervision and control, and failed to properly supervise such individuals, with deliberate indifference to the rights to safety and protections while under enrolled in RASP. Each of these supervising Defendants either directed his or her subordinates in conduct that violated J.C.'s rights, or set in motion a series of acts and omissions by his or her subordinates that the supervisor knew or reasonably should have known would deprive J.C. of rights, or knew his or her subordinates were engaging in acts likely to deprive J.C. of rights and failed to act to prevent his or her subordinate from engaging in such conduct, or disregarded the consequence of a known or obvious training deficiency that he or she must have known would cause subordinates to violate J.C. rights, and in fact did cause the violation of J.C. rights. (*See* Ninth Circuit Model Civil Jury Instruction 9.4). Furthermore, each of these supervising Defendants is liable in their failures to intervene in their subordinates' apparent violations of J.C. rights.

146.  The unconstitutional actions and/or omissions of Defendants

HEIDECKER and 1 through 10, and other COUNTY and RCSD personnel, as described above, were approved, tolerated, and/or ratified by policymaking officers for the COUNTY and RCSD, including Defendants SHERIFF CHAD BIANCO, JESSICA YELENICH and DOES 8 through 10.

147.  Plaintiff is informed and believes and thereon alleges that the details of this incident have been revealed to Defendants SHERIFF CHAD BIANCO, JESSICA YELENICH and DOES 8 through 10 and that such Defendant-policymakers have direct knowledge of the fact that HEIDECKER was sexually abusing and preying upon RASP participants, but continued to carry out their duties and responsibilities with deliberate indifference to J.C. rights to be protected from sexual abuse and conduct which shocked the conscious while a RASP participants as set forth above.

148.  Notwithstanding this knowledge, on information and belief, Defendants SHERIFF CHAD BIANCO, JESSICA YELENICH and DOES 8 through 10 have approved and ratified of the conduct and decisions of Defendants HEIDECKER and DOES 1 through 5 in this matter, and have made a deliberate choice to endorse such conduct and decisions, and the basis for them, that resulted in the sexual abuse of J.C. By so doing, Defendants SHERIFF CHAD BIANCO, JESSICA YELENICH and DOES 8 through 10 have shown affirmative agreement with the individual Defendants' actions and have ratified the unconstitutional acts of the individual Defendants.

149.  Furthermore, Plaintiffs are informed and believe, and thereupon allege, that Defendants SHERIFF CHAD BIANCO, JESSICA YELENICH and DOES 8 through 10 and other policymaking officers for the COUNTY and RCSD were and are aware of a pattern of misconduct and injury, and a code of silence, caused by COUNTY and RCSD deputies similar to the conduct of Defendants described herein, but failed to discipline culpable law enforcement officers and employees and failed to institute new procedures and policy within the COUNTY and RCSD.

150.  Defendants subjected J.C. to their wrongful conduct, depriving J.C. of

**COMPLAINT FOR DAMAGES**

rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of J.C. and others would be violated by their acts and/or omissions.

151.  As a direct and proximate result of the unconstitutional actions, omissions, customs, policies, practices, and procedures of Defendants SHERIFF CHAD BIANCO, JESSICA YELENICH and DOES 8 through 10 as described above, Plaintiff sustained serious and permanent injuries and is entitled to damages, penalties, costs, and attorneys' fees.

## SEVENTH CLAIM FOR RELIEF

### Negligence

**By Plaintiff As Against All Defendants, Save SHERIFF BIANCO and JESSICA YELENICH**

152.  Plaintiff realleges and incorporates herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

153.   The present claim for relief is brought pursuant to Cal. Gov. Code §§ 815.2 and 820. Under § 820 of the Government Code, as public employees, Defendant HEIDECKER is liable for injuries caused by his acts or omissions to the same extent as private persons. Under § 815.2 of the Government Code, as public entities, RCSD and COUNTY are liable for injuries caused by the acts or omissions of their employees committed within the course and scope of their employment. This claim for relief is not alleging direct liability against RCSD and COUNTY, only vicarious liability. *See* Gov. Code, § 815.2, subds. (a), (b); *see also Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1128.

154.   The present claim for relief is brought is also brought against Defendant VACA and by virtue of Defendant VACA's employment, Defendant SENTINEL as well.

155.   At all times, Defendants HEIDECKER, VACA and DOES 1-10 owed J.C. a duty to use reasonable care.

**COMPLAINT FOR DAMAGES**

156.    These general duties of reasonable care and due care owed to J.C. by Defendant HEIDECKER include but are not limited to the following specific obligations:

    A. Contacting RASP participants and their family members while on duty for non-law enforcement purposes;

    B. Sexually grooming RASP participants and their family members;

    C. Sexually preying upon RASP participants and their family members;

    D. Sexually exploiting RASP participants and their family members;

    E. Taking advantage of RASP participants for sexual purposes and their family members;

    F. Improperly overseeing female RASP participants and their family members;

    G. Using personal cell phones to communicate with RASP participants and their family members;

    H. Engaging in sexually improper conduct while on duty such as making a video entitled "Big Dick Deputies"

157.    These general duties of reasonable care and due care owed to J.C. by Defendant VACA include but are not limited to the following specific obligations:

    A. Ignoring improper communications on SENTINEL cellular phones;

    B. Ignoring sexual communications between RCSD deputies and RASP participants and their family members on SENTINEL cellular phones;

    C. Failing to report improper communications on SENTINEL cellular phones;

    D. Failing to report sexual communications between RCSD deputies and RASP participants and their family members on SENTINEL cellular phones;

    E. Having a romantic relations with RCSD deputies; and

    F. Having a sexual relations with RCSD deputies.

**COMPLAINT FOR DAMAGES**

158.   Defendants HEIDECKER, VACA and DOES 1-10 through their acts
and omissions, breached each and every one of the aforementioned duties owed to
J.C.

159.   As a direct and proximate result of these Defendants HEIDECKER,
VACA's negligence, J.C. sustained injuries and damages.

160.   Defendants RCSD and COUNTY are vicariously liable for the violations
of state law and conduct of their officers, employees, and agents, including individual
named defendants, under California Government Code § 815.2.

161.   Defendant SENTINEL is liable for Defendant VACA's conduct under
the doctrine of *respondeat superior. See Perez v. Van Groningen & Sons ,Inc*. (1986)
41 Cal.3d 962, 967.

## EIGHTH CLAIM FOR RELIEF

### Sexual Assault

### By Plaintiff As Against Defendant COUNTY, RCSD, & HEIDECKER

162.   Plaintiff realleges and incorporates herein by reference each of the
preceding paragraphs of this complaint, and any subsequent paragraphs.

163.   The present claim for relief is brought pursuant to Cal. Gov. Code §§
815.2 and 820. Under § 820 of the Government Code, as public employees,
Defendant HEIDECKER is liable for injuries caused by his acts or omissions to the
same extent as private persons. Under § 815.2 of the Government Code, as public
entities, RCSD and COUNTY are liable for injuries caused by the acts or omissions
of their employees committed within the course and scope of their employment. This
claim for relief is not alleging direct liability against RCSD and COUNTY, only
vicarious liability. *See* Gov. Code, § 815.2, subds. (a), (b); *see also Zelig v. County of
Los Angeles* (2002) 27 Cal.4th 1112, 1128.

164.   As alleged herein, Defendant HEIDECKER sexually assaulted Plaintiff
J.C.'s by intending to cause a harmful and offensive contact with J.C.'s intimate body
parts. Further, Defendant HEIDECKER also caused an imminent fear of a harmful or

offensive contact with J.C.'s intimate body parts. Clearly, Defendant HEIDECKER' intent was to cause a harmful or offensive contact with Plaintiff's body in a sexual manner.

165.    Plaintiff J.C. did not consent to the  harmful or offensive contact.

166.    As a direct and proximate result of these Defendant HEIDECKER and DOES 1-10' conduct, J.C. sustained injuries  and damages.

167.    The conduct of Defendant HEIDECKER entitles Plaintiff to punitive damages and penalties as provided by law. Plaintiff does not seek punitive damages against Defendants RCSD and COUNTY.

168.    Defendants RCSD and COUNTY are vicariously liable for the violations of state law and conduct of their officers, employees, and agents, including individual named defendants, under California Government Code § 815.2.

## NINTH CLAIM FOR RELIEF

### Violation of California Civil Code § 52.4

### (Gender Violence)

### By Plaintiff As Against Defendant COUNTY, RCSD, & HEIDECKER

169.  Plaintiff realleges and incorporates herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

170.    The present claim for relief is brought pursuant to Cal. Gov. Code §§ 815.2 and 820. Under § 820 of the Government Code, as public employees, Defendant HEIDECKER is liable for injuries caused by his acts or omissions to the same extent as private persons. Under § 815.2 of the Government Code, as public entities, RCSD and COUNTY are liable for injuries caused by the acts or omissions of their employees committed within the course and scope of their employment. This claim for relief is not alleging direct liability against RCSD and COUNTY, only vicarious liability. *See* Gov. Code, § 815.2, subds. (a), (b); *see also Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1128.

171.   As alleged herein, Defendant HEIDECKER sexually assaulted Plaintiff J.C.'s by intending to cause a harmful and offensive contact with J.C.'s intimate body parts. Further, Defendant HEIDECKER also caused an imminent fear of a harmful or offensive contact with J.C.'s intimate body parts. Clearly, Defendant HEIDECKER' intent was to cause a harmful or offensive contact with Plaintiff's body in a sexual manner.

172.   Pursuant to Civil Code § 52.4, for purposes of this section, "gender violence" is a form of sex discrimination and means either of the following:

(1) One or more acts that would constitute a criminal offense under state law that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, committed at least in part based on the gender of the victim, whether or not those acts have resulted in criminal complaints, charges, prosecution, or conviction.

(2) A physical intrusion or physical invasion of a sexual nature under coercive conditions, whether or not those acts have resulted in criminal complaints, charges, prosecution, or conviction.

173.   On March 7, 2024, Defendant HEIDECKER was convicted of multiple felonies for his sexual criminal conduct against RASP participants and their family members, including Plaintiff J.C. and such conduct is gender violence within the meaning of Civil Code § 52.4.

174.   Furthermore, Defendant ADAM VILLALOBOS committed a physical intrusion or physical invasion sexual in nature as detailed herein. The conditions of such physical intrusion or physical invasion were coercive because Defendant HEIDECKER was a sheriff deputy wielding disproportionate power over RASP participants and their family member,  including Plaintiff J.C. Such conduct is gender violence within the meaning of Civil Code § 52.4.

175.   As a direct and proximate result of these Defendant HEIDECKER and DOES 1-10' conduct, Plaintiff J.C. sustained injuries  and damages.

176.   The conduct of Defendant HEIDECKER entitles Plaintiff to punitive damages and penalties as provided by law. Plaintiff does not seek punitive damages against Defendants RCSD and COUNTY.

177.   Defendants RCSD and COUNTY are vicariously liable for the violations of state law and conduct of their officers, employees, and agents, including individual named defendants, under California Government Code § 815.2.

## TENTH CLAIM FOR RELIEF

### Violation of Civil Code Section § 1708.88

### By Plaintiff As Against Defendant COUNTY, RCSD, & HEIDECKER

178.   Plaintiff realleges and incorporates herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

179.   The present claim for relief is brought pursuant to Cal. Gov. Code §§ 815.2 and 820. Under § 820 of the Government Code, as public employees, Defendant HEIDECKER is liable for injuries caused by his acts or omissions to the same extent as private persons. Under § 815.2 of the Government Code, as public entities, RCSD and COUNTY are liable for injuries caused by the acts or omissions of their employees committed within the course and scope of their employment. This claim for relief is not alleging direct liability against RCSD and COUNTY, only vicarious liability. *See* Gov. Code, § 815.2, subds. (a), (b); *see also Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1128.

180.   In July of 2023 through August of 2023, Defendant HEIDECKER violated Civil Code Section § 1708.88 when he knowingly sent J.C. images, which he knew was unsolicited, by electronic means, depicting obscene material.

181.   As a direct and proximate result of these Defendant HEIDECKER and DOES 1-10' conduct, Plaintiff J.C. sustained injuries and damages.

182.   The conduct of Defendant HEIDECKER entitles Plaintiff to punitive damages and penalties as provided by law. Plaintiff does not seek punitive damages against Defendants RCSD and COUNTY.

183.   Defendants RCSD and COUNTY are vicariously liable for the violations of state law and conduct of their officers, employees, and agents, including individual named defendants, under California Government Code § 815.2.

## ELEVENTH CLAIM FOR RELIEF

### Violation of California Civil Code § 52.1

### (Tom Bane Act)

**By Plaintiff As Against All Defendants, Save SHERIFF BIANCO and JESSICA YELENICH**

184.  Plaintiff realleges and incorporates herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

185.   The present claim for relief is brought pursuant to Civil Code Section 52.1 and Cal. Gov. Code §§ 815.2 and 820. Under § 820 of the Government Code, as public employees, Defendant HEIDECKER is liable for injuries caused by his acts or omissions to the same extent as private persons. Under § 815.2 of the Government Code, as public entities, RCSD and COUNTY are liable for injuries caused by the acts or omissions of their employees committed within the course and scope of their employment. This claim for relief is not alleging direct liability against RCSD and COUNTY, only vicarious liability. *See* Gov. Code, § 815.2, subds. (a), (b); *see also Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1128.

186.   By his act and omissions, Defendants HEIDECKER and VACA, through threat, intimidation, and/or coercion, interfered with, attempted to interfere with, and violated Plaintiff J.C. rights under California Civil Code § 52.1 and under the United States Constitution and California Constitution as follows:

A. To be free from bodily harm pursuant to Cal. Civ. Code § 43;

B. The right to be free from governmental interference as secured by the Fourteenth Amendments to the United States Constitution and by California Constitution, Article 1, §§ 7 and 13;

**COMPLAINT FOR DAMAGES**

C. The right to enjoy and defend life and liberty; acquire, possess, and protect property; and pursue and obtain safety, happiness, and privacy, as secured by the California Constitution, Article 1, § 1.

187.    Defendant HEIDECKER's and VACA's violations of Plaintiff J.C.'s due process rights with deliberate indifference, in and of themselves constitute violations of the Bane Act.

188.    Alternatively, separate from, and above and beyond, Defendants Defendant HEIDECKER'S attempted interference, interference with, and violation of Plaintiff J.C.'s rights as described above, Defendant violated Plaintiff J.C.'s rights by the following conduct constituting threat, intimidation, or coercion:

A. Contacting RASP participants while on duty for non-law enforcement purposes;

B. Sexually grooming RASP participants;

C. Sexually preying upon RASP participants;

D. Sexually exploiting RASP participants;

E. Taking advantage of RASP participants for sexual purposes;

F. Improperly overseeing female RASP participants;

G. Using personal cell phones to communicate with RASP participants;

H. Engaging in sexually improper conduct while on duty such as making a video entitled "Big Dick Deputies"

189.    Alternatively, separate from, and above and beyond, Defendants Defendant VACA's attempted interference, interference with, and violation of Plaintiff J.C.'s rights as described above, Defendant violated Plaintiff J.C.'s rights by the following conduct constituting threat, intimidation, or coercion:

A. Ignoring improper communications on SENTINEL cellular phones;

B. Ignoring sexual communications between RCSD deputies and RASP participants and their family members on SENTINEL cellular phones;

**COMPLAINT FOR DAMAGES**

C.  Failing to report improper communications on SENTINEL cellular phones;

D.  Failing to report sexual communications between RCSD deputies and RASP participants and their family members on SENTINEL cellular phones;

E.  Having a romantic relations with RCSD deputies; and

F.  Having a sexual relations with RCSD deputies.

190.  Further, all of Defendant's violations of duties and rights, and coercive conduct, described herein were volitional acts; none was accidental or merely negligent.

191.  Further, Defendant HEIDECKER and VACA violated Plaintiff's rights with reckless disregard and with the specific intent and purpose to deprive her of their enjoyment of those rights and of the interests protected by those rights.

192.  As a direct and proximate result of these Defendants HEIDECKER, VACA and DOES 1-10' conduct, J.C. sustained injuries and damages.

193.  As a direct and proximate result of Defendants HEIDECKER's and VACA's violation of California Civil Code § 52.1 and of Plaintiff's rights under the Civil Code, United States and California Constitutions, Plaintiff sustained injuries and damages, and against each and every Defendant is entitled to relief, including punitive damages against all individual Defendants, and all damages allowed by California Civil Code §§ 52 and 52.1 and California law, not limited to a multiplier of damages including treble damages, costs attorneys' fees, and civil penalties.

194.  Defendant SENTINEL is liable for Defendant VACA's conduct under the doctrine of *respondeat superior*. *See Perez v. Van Groningen & Sons ,Inc*. (1986) 41 Cal.3d 962, 967.

///

///

///

## VII.

## **REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests that the Court enter a judgment as follows:

A.    For economic and non-economic damages including but not limited to Plaintiff's physical, mental, and emotional pain and suffering, as well as all past, present, and future related medical expenses, in an amount according to proof at trial;

B.    For a multiplier of damages, including treble damages, as authorized under both Cal. Civ. Code § 52 and § 52.1;

C.    For civil penalties in the amount of $25,000 as authorized under both Cal. Civ. Code § 52 and§ 52.1;

D.    Damages and penalties pursuant to Civil Code Section § 1708.88;

E.    For punitive damages against the individual defendants in an amount to be proven at trial;

F.    For the reasonable attorneys' fees and costs allowed under 42 U.S.C. § 1988 and/or § 52 and § 52.1 in an amount to be proven at trial;

///
///
///
///
///
///
///
///
///
///
///

48

**COMPLAINT FOR DAMAGES**

G.    For all other damages allowed under state and federal law, and

H.    For such further relief as the Court may deem appropriate, proper, and just.

Dated: March 26, 2024        **GASTÉLUM LAW, APC**

By: _Denisse O. Gastélum_
Denisse O. Gastélum, Esq.
Attorneys for Plaintiff,
J.C.

Dated: March 26, 2024        **LAW OFFICES OF CHRISTIAN CONTRERAS**
**A PROFESSIONAL LAW CORPORATION**

By: _Christian Contreras_
Christian Contreras, Esq.
Attorneys for Plaintiff,
J.C.

**COMPLAINT FOR DAMAGES**

1

## DEMAND FOR JURY TRIAL

2
Plaintiff hereby makes a demand for a jury trial in this action.

3

4
Dated: March 26, 2024      **GASTÉLUM LAW, APC**

5
By: _____

6
Denisse O. Gastélum, Esq.

7
Attorneys for Plaintiff,
J.C.

8

9
Dated: March 26, 2024      **LAW OFFICES OF CHRISTIAN CONTRERAS**

10
**A PROFESSIONAL LAW CORPORATION**

11

12
By: _____

13
Christian Contreras, Esq.

14
Attorneys for Plaintiff,
J.C.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**COMPLAINT FOR DAMAGES**